IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 14-cv-03016-KLM

DIANNA STEELE,

    Plaintiff,

v.

COLORADO SPRINGS EARLY COLLEGES,
KEITH KING, in his individual capacity, and
JASON DILGER, in his individual capacity,

    Defendants.
_____

**ORDER**
_____

**ENTERED BY MAGISTRATE JUDGE KRISTEN L. MIX**

This matter is before the Court on Plaintiff's **Partial Motion for Summary Judgment** [#35][1] (the "Motion").[2] Defendants filed a Response [#36] in opposition to the Motion, and Plaintiff filed a Reply [#38]. The Court has reviewed the Motion, Response, Reply, the entire case file, and the applicable law, and is sufficiently advised in the premises. For the reasons set forth below, the Motion [#35] is **GRANTED**.

### I. Summary of the Case[3]

---

[1] "[#35]" is an example of the convention the Court uses to identify the docket number assigned to a specific paper by the Court's case management and electronic case filing system (CM/ECF). This convention is used throughout this Order.

[2] The case has been referred to the undersigned for all purposes [#18] pursuant to the Court's Pilot Program and 28 U.S.C. § 636(c), on consent of the parties [#17].

[3] The following summary construes the evidence in the light most favorable to Defendants, as the nonmovants. *Ellis v. J.R.'s Country Stores, Inc.*, 779 F.3d 1184, 1186 (10th Cir. 2015) ("We . . . recit[e] all summary-judgment evidence in the light most favorable to . . . the nonmovant."). Neither Plaintiff nor Defendants explicitly contest each other's recitation of the facts as they apply to the issues discussed below, but rather merely argue over the legal interpretation of those facts.

Based on the following events, Plaintiff asserts a First Amendment free speech retaliation claim.[4] Plaintiff was employed as a full-time English teacher by Defendant Colorado Springs Early Colleges ("CSEC") for the 2013-2014 school year. *Depo. of Pl.* [#36-1] at 25. CSEC is a Colorado nonprofit corporation that operates a charter school.[5] *Compl.* [#1] ¶ 5; *Answer* [#8] ¶ 5. Plaintiff's contract with CSEC provided that her at-will employment covered a period from August 1, 2013, through July 30, 2014. *Depo. of Pl.* [#36-1] at 28-30, 181. Defendant Keith King ("King") is the administrator of CSEC, "a position equivalent to the chief executive officer of a private company or president of a college." *Final Pretrial Order* [#34] at 7-8 ¶ 5 ("Stipulations"). He has the authority to hire or dismiss any employee of CSEC. *Id.* Defendant Jason Dilger ("Dilger") was the Head of School of CSEC, "a position equivalent to the principal of a traditional public school." *Id.* at 8 ¶ 6. In consultation with Defendant King, Defendant Dilger has the authority to hire or dismiss any employee of CSEC except the administrator and central administration employees. *Id.*

The majority of the doors to the buildings on the CSEC campus are kept locked except for two doors where the visitor's center is located. *Depo. of Dilger* [#36-2] at 23. Visitors to CSEC first check in at the front desk, where they receive a visitor's pass. *Id.* at

---

[4] Plaintiff's First Amendment free association retaliation claim is not at issue in the present Motion. [#35] at 2. Further, as discussed in more detail below, the only element of Plaintiff's free speech claim at issue here is whether Plaintiff's speech was on a matter of public concern. *Response* [#36] at 3. Thus, the following recitation primarily focuses on facts which impact the Court's analysis of this element.

[5] The parties do not further describe CSEC. However, a Colorado statute describes "Colorado Springs early colleges in Colorado Springs" [sic] as "a secondary school that provides only a curriculum that is designed in a manner that ensures that a student who successfully completes the curriculum will have completed either an associate's degree or sixty credits toward the completion of a postsecondary credential." Colo. Rev. Stat. ¶ 22-35-103(10)(d).

23-24. After 4:00 pm, all doors, including the two to the visitor's center, are locked. *Id.* at 24. In August 2013, Plaintiff was informed of CSEC's visitor procedures. [#36-1] at 46-47, 49.

Security cameras are not required at schools in Colorado, but CSEC maintains security cameras on its campus. *Id.* at 60-61; *Depo. of King* [#36-3] at 35. Generally, indoor cameras show walking areas between the entrances to classrooms. [#36-1] at 61. Suite E is a building which houses the school's administrative offices and is separate from the buildings housing the student classrooms. [#36-2] at 41-42. In part, outdoor cameras there view a portion of the parking lot where Suite E is located, the parking lot between Suite E and some of the classrooms, and the side entrance of the school from which students exit to board buses. [#36-1] at 61. All cameras were operational at the time underlying the events of this lawsuit. [#36-2] at 27.

On April 3, 2013, a private process server arrived at Suite E and was directed by a CSEC employee to Plaintiff's classroom because it was after school hours and no students were present. *Id.* at 40-41; [#36-1] at 55-56. The process server served Plaintiff with legal papers for a lawsuit filed against her and her son (the "Arizona Lawsuit"). [#36-1] at 63-64, 66. Anne Swigard ("Swigard"), the plaintiff in the Arizona Lawsuit, is described by Plaintiff as a "stalker." *Id.* at 58-59, 63, 67.

That same day, after being served, Plaintiff asked Stephen Stewart ("Stewart"), an employee in CSEC's IT office, if she could view the surveillance video showing the process server. *Id.* at 60-61. The camera footage showed the process server "coming from that side of the parking lot where Suite E is located, coming across the parking lot and to [Plaintiff's] classroom, in the side entrance of the school where the students exit to go out

to the bus." *Id.* at 61. Other footage showed the process server entering the building and walking to Plaintiff's classroom. *Id.*

After reviewing this footage, Plaintiff met with Defendant Dilger. *Id.* at 62. She told him "Somebody just served me these papers, and I am not sure what it is about," and "I just got served. I can't believe it." [#36-2] at 35-36.

When Plaintiff left the CSEC campus that night, she started to go home, but, worried that she could be followed, she pulled into Mateos Salon, where she normally gets her hair cut, and went inside the salon to hide because she was "shaken up." [#36-1] at 75. Plaintiff was distraught because "Ms. Swigard had never gone that far, and now [Plaintiff] was aware that she knew where [Plaintiff] worked and probably where [Plaintiff] live[d]. [Plaintiff] was upset that someone had been able to breach what [she] thought was the sanctity of [her] classroom. It shook [her] up." *Id.* at 77. As she hid in the salon, Plaintiff called a woman named Ms. Rivera, whom Plaintiff believed was the head of Human Resources for CSEC. *Id.* at 78-79. Plaintiff told Ms. Rivera what had occurred, asked Ms. Rivera whether she knew anything about what had happened that day, and asked her to find out what she could do about it. *Id.* at 78-79.

After Plaintiff went home, she called the police. *Id.* at 81. An officer came to Plaintiff's house, and they talked about what happened, what Plaintiff could do, "about what had happened with this woman [Ms. Swigard] up to this point," and the efficacy of obtaining a protective order. *Id.* at 82. Plaintiff ultimately sought to obtain a restraining order against Ms. Swigard in El Paso County, Colorado. *Id.* at 68. In support of her report to the police and her attempt to obtain a restraining order, on April 4, 2014 (the day after she was served with the Arizona Lawsuit), Plaintiff requested information from CSEC, including (a) a copy

-4-

of the video footage of the process server; (b) a photograph of the process server; and (c) the name of the CSEC employee who had directed the process server to Plaintiff's classroom. *Id.* at 85, 94-95. CSEC provided Plaintiff with each of these items the same day she made the requests. *Id.* at 98, 108. While making these requests, Plaintiff did not want to share information with CSEC about the circumstances involving the service of legal papers on her because she felt the matter was personal. *Id.* at 96. Plaintiff took the information she had obtained from CSEC with her to court the following Monday, April 7, but she was unsuccessful in obtaining a restraining order against Ms. Swigard. *Id.* at 68, 100-01, 110.

The next day, April 8, Plaintiff wrote a memorandum which she submitted to CSEC on April 9 (the "April 9 Memo"). *Id.* at 112; *April 9 Memo* [#35-4]. The April 9 Memo states in full:

> April 9, 2013
>
> Pursuant to the incident that happened on April 3 in my classroom at CSEC, I have the following concerns, both as the parent of a CSEC student and as an employee:
>
> 1. On April 4, I was informed by CSEC Head of Human Resources, Darlisse Rivera, "we have no established policy" on process services and "we don't do visitor passes" over at that office [in Suite E]."
>
> 2. On April 4, in the process of attempting to gain information about the man who came to CSEC campus claiming to be a process server, I was told by CSEC IT Manager that "we do not monitor the camera in Suite E because it belongs to CTU[6].["] Following up, I learned from the Head of Security at CTU, Matt Delapondo, on April 7 that the security camera in Suite E is offline and "deader than a doornail". He stated that CTU turned control of this camera, and thus responsibility for monitoring and maintenance, over to

---

[6] The parties do not define "CTU," but the acronym appears to mean Colorado Technical University, a branch of which is located on or near the same campus as CSEC. Regardless, the precise identity of "CTU" is immaterial to resolution of the present Motion.

>CSEC in Summer of 2012. He further stated that maintenance of the camera appears to have been neglected and there is no way to tell how long the camera has been nonfunctioning because they do not monitor it nor have they since August 2012.
>
>3. In the same conversation on April 7 with Matt Delapondo I was told the camera in S and SE parking lots between CTU and CSEC are "horrible, really horrible . . . [T]hey rarely work, and when they do work the footage is so bad it's almost impossible to make out what you're looking at".
>
>Based on these discoveries, I am concerned for the safety of students, staff and anyone else who visits those areas.
>
>I believe it is imperative that CSEC address these matters immediately beginning with a collaborative effort between CSEC and CTU to remedy the issues with security cameras on campus to insure that they are in working order at all times. Furthermore, CSEC needs to develop a written policy on process servers and other business matters conducted on this campus involving unknown persons/strangers. Subsequently, all appropriate staff must be trained on a procedure to follow this policy.
>
>I am willing to serve on a team to develop policies to make CSEC a safer environment for students, faculty, staff and others visiting this campus.
>
>Thank you for your immediate attention to these concerns.
>
>DiAnna Steele

*See* [#35-4]. Plaintiff believed that CSEC should have been working more quickly than it was to enhance its already existing safety equipment. [#36-1] at 118. "Following the conclusion of the 2013-2014 school year, CSEC refused to provide [Plaintiff] with a contract to teach for the 2014-2015 school year." *Final Pretrial Order* [#34] at 13 ¶ 50 ("Stipulations").

## II. Standard of Review

The purpose of a motion for summary judgment pursuant to Fed. R. Civ. P. 56 is to assess whether trial is necessary. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). An issue is genuine if the evidence is such that a reasonable jury could resolve the issue

in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A fact is material if it might affect the outcome of the case under the governing substantive law. *Id.*

The burden is on the movant to show the absence of a genuine issue of material fact. *Adler v. Wal–Mart Stores, Inc.*, 144 F.3d 664, 670-71 (10th Cir. 1998) (citing *Celotex*, 477 U.S. at 323). When the movant does not bear the ultimate burden of persuasion at trial, the "movant may make its prima facie demonstration [of the absence of a genuine issue of material fact] simply by pointing out to the [C]ourt a lack of evidence for the nonmovant on an essential element of the nonmovant's claim." *Id.* at 671. If the movant carries the initial burden of making a prima facie showing of a lack of evidence, the burden shifts to the nonmovant to put forth sufficient evidence for each essential element of his claim such that a reasonable jury could find in his favor. *See Anderson*, 477 U.S. at 248; *Simms v. Okla. ex rel. Dep't of Mental Health & Substance Abuse Servs.*, 165 F.3d 1321, 1326 (10th Cir. 1999), abrogation recognized by *Eisenhour v. Weber Cnty.*, 744 F.3d 1220, 1227 (10th Cir. 2014). Conclusory statements based merely on conjecture, speculation, or subjective belief are not competent summary judgment evidence. *Bones v. Honeywell Int'l, Inc.*, 366 F.3d 869, 875 (10th Cir. 2004). The nonmoving party's evidence must be more than "mere reargument of [his] case or a denial of an opponent's allegation" or it will be disregarded. *See* 10B Charles Alan Wright, et al., Federal Practice and Procedure § 2738 at 356 (3d ed. 1998).

Only documents that adhere to the evidentiary requirements of Fed. R. Civ. P. 56 may be considered for purposes of summary judgment. Rule 56(c) provides that:

> (1) A party asserting that a fact cannot be or is genuinely disputed must support the assertion by:

> (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials[.]
> ...
> (3) Materials Not Cited. The court need consider only the cited materials, but it may consider other materials in the record.
> (4) Affidavits or Declarations. An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated.

Fed. R. Civ. P. 56(c)(1)-(4).

### III.  Analysis

"While a citizen entering public service necessarily must accept certain limitations on his or her freedom, the First Amendment doesn't permit a public employer to restrict the liberties employees enjoy in their capacities as private citizens."[7]  *Holub v. Gdowski*, 802 F.3d 1149, 1154 (10th Cir. 2015) (citations and internal quotation marks omitted).  Pursuant to *Garcetti v. Ceballos*, 547 U.S. 410, 418-19 (2006), and *Pickering v. Board of Education of Township High School District 205, Will County, Illinois*, 391 U.S. 563 (1968), the Court applies a five-step test to determine whether a public employer violated the First Amendment by sanctioning the speech of an employee.  *Holub*, 802 F.3d at 1154.  The test requires the Court to determine:

> (1) whether the employee spoke pursuant to his or her official duties; if not,
> (2) whether the employee's citizen speech is a matter of public concern; if so,
> (3) whether the employee's interest in commenting on the issue outweighs

---

[7] The parties do not address the issue of whether CSEC is a public employer.  However, they agree that CSEC is a Colorado charter school.  Under Colorado law, "[a] charter school shall be a public, nonsectarian, nonreligious, non-home-based school which operates within a public school district."  Colo. Rev. Stat. 22-30.5-104(1).  "A charter school may organize as a nonprofit corporation pursuant to the 'Colorado Nonprofit Organization Act' . . . which shall not affect its status as a public school for any purposes under Colorado law."  *Moran v. Standard Ins. Co.*, 187 P.3d 1162, 1166 (Colo. App. 2008) (quoting *King v. United States*, 53 F. Supp. 2d 1056, 1066 (D. Colo. 1999) (*reversed on other grounds by King v. United States*, 301 F.3d 1270 (10th Cir. 2002)).

> the interest of the state as employer; if so, (4) whether the employee has demonstrated that his or her speech was a substantial or motivating factor in a detrimental employment decision; and, if so, (5) whether the employer has demonstrated that it would have taken the same action against the employee even in the absence of the protected speech.

*Id.* (citing *Brammer–Hoelter v. Twin Peaks Charter Acad.*, 492 F.3d 1192, 1202 (10th Cir. 2007)).

"Notably, the district court—as opposed to the trier of fact—resolves the first three *Garcetti/Pickering* inquiries." *Holub*, 802 F.3d at 1154 n.2. (citing *Brammer–Hoelter*, 492 F.3d at 1202-03). Here, Plaintiff moves only for entry of summary judgment with respect to these first three inquiries. *Motion* [#35] at 3. Defendants stipulate that Plaintiff has satisfied the first and third inquiries. *Response* [#36] at 3. Thus, only the second inquiry is at issue, i.e., whether Plaintiff's speech was on a matter of public concern.

"Speech is a matter of public concern if it is of interest to the community . . . ." *Trant v. Oklahoma*, 754 F.3d 1158, 1166 (10th Cir. 2014) (citation and internal quotation marks omitted). In making this determination, the Court "focus[es] on the motive of the speaker and whether the speech is calculated to disclose misconduct or merely deals with personal disputes and grievances unrelated to the public's interest." *Id.* (citation and internal quotation marks omitted). "Statements revealing official impropriety usually involve matters of public concern." *Id.* (quoting *Brammer–Hoelter*, 492 F.3d at 1205).

In *Trant v. Oklahoma*, 754 F.3d at 1165-66, the Tenth Circuit Court of Appeals discussed a case in which there was evidence that the plaintiff's motivation was mixed:

> Irregularity in a grand jury investigation into a public agency's alleged misconduct is a matter of public concern. Although [the plaintiff's] speech may have been motivated in part by his riff with the Board, the subject matter of the dispute concerned misconduct in a grand jury investigation involving official impropriety, which is undoubtedly of interest to the community.

Despite this mixed motivation, the Tenth Circuit determined that the plaintiff had spoken on a matter of public concern. *Trant*, 754 F.3d at 1165. Thus, speech may be a matter of public concern even in instances where a plaintiff also has a personal motive for the speech. *See id.*

Such appears to be the situation in the present case. Defendants concede that "school safety is a matter of public concern" but in part argue that there are issues of material fact regarding whether Plaintiff's speech was actually about school safety, as opposed to about Plaintiff's personal grievances. *Response* [#36] at 10. The Court recognizes that there may be a logical causal gap between Plaintiff's experience of being served with legal process in her working environment and her alleged concern for "safety" expressed in the April 9 Memo, because she fails to allege that her safety was threatened by the process server or that service of process is an inherently unsafe activity. Presumably Plaintiff felt "unsafe" because someone at the school allowed an unknown adult male access to her in her classroom after school hours. Regardless, Plaintiff's speech need not be unequivocally unrelated to a recent personal experience in order to be on a matter of public concern. Moreover, Defendants do not direct the Court's attention to any specific material factual disputes about the nature of Plaintiff's speech, but instead appear to argue that the facts taken as a whole demonstrate that her speech was not on a matter of public concern. *See, e.g.*, *id.* at 11.

The facts, as discussed by the Court above, do not demonstrate that Plaintiff's April 9 Memo "merely deals with personal disputes and grievances unrelated to the public's interest." *See Trant*, 754 F.3d at 1166. There is no dispute that Plaintiff's investigation of CSEC's security was instigated by the process server serving her on campus, and there

appears little doubt that Plaintiff, as well as others on the CSEC campus, could generally benefit from an improvement in security. However, given the clear language of the April 9 Memo, the parties' stipulated fact that school safety is a matter of public concern, and the lack of evidence in the record regarding any immediate and specific threat to Plaintiff's well-being that could be addressed by the issues raised in the letter, the Court must find that Plaintiff spoke on a matter of public concern. Even if Plaintiff's investigation were partially motivated by her experience with the process server, the subject matter of the April 9 Memo, i.e., improvement of school security, remains a matter of public concern (as the parties agree). *Trant* makes clear that a plaintiff with a mixed motive can still meet the second element of a First Amendment free speech retaliation claim.

Defendants cite to *Lighton v. University of Utah*, 209 F.3d 1213 (10th Cir. 2000), in support of their argument that Plaintiff's speech was not on a matter of public concern. *Response* [#36] at 10, 13. In *Lighton*, the Tenth Circuit Court of Appeals stated:

> [I]t does not appear Dr. Lighton's speech about Dr. Fielden's alleged unauthorized use of property rose to that of "public concern," but—as the district court said—was more of a "vendetta." The record discloses Dr. Lighton knew about Dr. Fielden's alleged unauthorized use of the equipment, but did not report it until nine months later—immediately after Dr. Fielden raised sexual harassment and retaliation charges against him. Under these circumstances, we are persuaded Dr. Lighton did not disclose the information concerning the equipment for the principal aim or Good Samaritan purpose of disclosing "government misconduct," but for his own personal reasons for either getting even with, or using leverage against, Dr. Fielden.

*Lighton*, 209 F.3d at 1224 (footnotes omitted). *Lighton* is distinguishable from the facts of the present case, however, because there is no indication that Plaintiff was pursuing a "vendetta" against anyone at the school, and there is no indication in the facts presently before the Court that Plaintiff was long aware of the specific problems about which she spoke prior to the service of the lawsuit and her subsequent investigation into those issues.

In fact, when she became aware of the potential security issues at the school, the record demonstrates that she immediately raised them to the administration within days of her independent investigation.

In sum, taking the facts in a light most favorable to Defendant, the Court finds that, at most, the evidence demonstrates that Plaintiff had mixed private and public motives for the speech at issue. This is enough to meet her burden. See *Trant*, 754 F.3d at 1165. Accordingly, summary judgment shall enter in favor of Plaintiff on this element of her claim.

### IV. Conclusion

For the foregoing reasons,

IT IS HEREBY **ORDERED** that the Motion [#35] is **GRANTED**. Summary judgment is hereby entered in favor of Plaintiff on the first three elements of Plaintiff's First Amendment free speech retaliation claim. The fourth and fifth elements of Plaintiff's First Amendment free speech claim as well as her First Amendment free association retaliation claim remain for trial.

Dated: November 18, 2015

BY THE COURT:

Kristen L. Mix
United States Magistrate Judge